UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAUN ALEXANDER,

                      Plaintiff,

v.                                                                   Case No. 24-cv-748-pp

CROWN AND COMMON BAR AND GRILL, *et al.*,

                      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

Plaintiff Shaun Alexander, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On June 27, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $5.89. Dkt. No. 6. The court received that fee on July 8, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.   Screening the Complaint

### A.   Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

  B. The Plaintiff's Allegations

The plaintiff says that he is bringing his complaint "on behalf of himself and the Berserkers Motorcycle club." Dkt. No. 1 at 1. He sues the Crown and Common Bar and Grill in Green Bay, its two John Doe owners and a John Doe employee. Id. at 2.

The complaint alleges that the Crown and Common "is considered a public place of . . . accommodation or amusement." Id. at 3 at ¶2. It alleges that the Berserkers "are a religious and cultural motorcycle club, headquartered in Green Bay." Id. at ¶4. Most "club members practice 'Asatru' as their respective religion, which the plaintiff explains "is an internationally recognized religion, and also recognized by the U.S. Government." Id.

The plaintiff alleges that between January and May 2022, the Berserkers "commonly frequented Crown and Common while wearing their motorcycle club vest[s]." Id. at ¶5. He says the Berserkers "wear patches that identify their membership in the club." Id. at 4, ¶6. He alleges that during these months, the Berserkers "wore their colors and their 'Thors Hammer' religious pendant without issue, reprisal, or restriction." Id. at ¶7. The plaintiff says that sometime in May 2022, while the Berserkers were at Crown and Common, John Doe #1 spoke with the plaintiff about the Thor's Hammer pendant. Id. at ¶8. The plaintiff says that he explained to Doe #1 that it was a religious symbol, "similar to a rosary, cross, Ankh, moon and crescent, star of David, etc." Id. He recounts that Doe #1 asked him whether "all Berserkers practice the same religion," to which the plaintiff replied, "for the most part." Id.

The plaintiff alleges that a couple of days later, the Berserkers returned to the Crown and Common. Id. at ¶9. He says that Doe #1 approached him "and shouted loud enough for everyone in Crown and Common to hear, 'You racist ass pagans are no longer welcome here . . . Get out.'" Id. The plaintiff says he approached Doe #1, asked Doe #1 "to lower his voice" and "inquired where he received such misinformation." Id. at ¶10. Doe #1 told the plaintiff that he "'googled [*sic*] Asatru', and read an article about Asatru being a 'racist religion.'" Id. The plaintiff says he "attempted to rationalized with Doe #1," who called Doe #3 over to "'remove' the Berserkers and [the plaintiff] from Crown and Common." Id. at ¶11. The plaintiff avers that Asatru "is not a racist religion" and says Doe

#1's blanket characterization constituted "discrimination and slander." Id. at ¶12.

The plaintiff alleges that on May 13, 2022, he and the Berserkers returned to Crown and Common "in the hopes of having a reasonable conversation with Doe #1." Id. at 5, ¶13. He says that Doe #2 introduced himself as one of the owners, and told the plaintiff that although he disagreed with Doe #1, he "must support him and his wishes," so he asked the Berserkers to leave. Id. The plaintiff alleges that all defendants "created a practice and sweeping policy to ban entry of anyone wearing Berserkers colors or a Thors Hammer pendant, contrary to law." Id. at ¶17 (capitalization omitted). He says that in June 2022, he asked another member of the Berserkers to enter the Crown and Common "while wearing a motorcycle vest adorned with a bunch of Christian based symbology." Id. at ¶18. He alleges that the other member "did so without restriction up until January 2023, at which point it was of no further use." Id.

The plaintiff alleges that he and the Berserkers did not engage in any illegal, disruptive or otherwise negative behavior. Id. at ¶14. He says he and all Berserkers have "side jobs, such as security, construction, etc." Id. at ¶15. He asserts that Doe #1's comments slandered the plaintiff and the Berserkers, tarnished their reputation, and violated their rights under the First and Fourteenth Amendments and state law. Id. at pp.3 and 5, ¶¶15–16. He seeks $350,000 total in damages. Id. at 5.

C.  <u>Analysis</u>

Section 1983 of Title 42 is the federal statute that allows a private person to sue state actors acting under color of state law for violating the private person's constitutional rights. To state a claim under §1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150 (1970). The plaintiff's complaint fails at the second element because it does not allege that any defendant was acting under color of state law. The complaint alleges only that private persons banned the plaintiff and other members of his motorcycle club from their restaurant. That does not state a claim under §1983.

Non-state actors may be considered state actors if they conspire with state officials to violate a person's rights, "act[] together with or . . . obtain[] significant aid from state officials, or [if their] conduct is otherwise chargeable to the State." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982); see <u>Greco v. Guss</u>, 775 F.2d 161, 168 (7th Cir. 1985) (citing <u>Adickes</u>, 398 U.S. at 152). The complaint does not allege facts that meet these circumstances. It does not allege that any state official was involved in the events the plaintiff describes. Nor does it allege that the Does conspired with or obtained aid from state officials or otherwise acted under color of state law when they banned the plaintiff and the Berserkers from the Crown and Common. The plaintiff may contest the Doe defendants' actions, but he may not do so in federal court under §1983.

The complaint also ostensibly asserts a claim under 42 U.S.C. §1981. Dkt. No. 1 at 3. Section §1981 "prohibits racial discrimination in the making and enforcement of private contracts." Runyon v. McCrary, 427 U.S. 160, 168 (1976). The plaintiff does not allege that the defendants interfered with his right to make or enforce a contract on account of his race or at all. The complaint does not state a claim under §1981.

Because the defendants are not state actors, the complaint fails to state a claim for relief. Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The complaint is thorough in its allegations of facts surrounding this claim; because the defendants are not state actors, the plaintiff cannot state a claim under §1983 and amendment would be futile.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$344.11** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution and to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no

8

Case 2:24-cv-00748-PP   Filed 07/23/24   Page 8 of 9   Document 7

merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 23rd day of July, 2024.

                                          **BY THE COURT:**

                                          **HON. PAMELA PEPPER**
                                          **Chief United States District Judge**